**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Timothy Kittle,<br><br>                                 Plaintiff,<br><br>        -v-<br><br>Mavis Discount Tire, Inc., and Greg Brown, individually,<br><br>                                 Defendants. | 2:24-cv-2537<br>(NJC) (AYS) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Timothy Kittle ("Kittle"), proceeding pro se, brings this action against Mavis Tire Supply LLC ("Mavis"), incorrectly sued as "Mavis Discount Tire Inc.," and Greg Brown ("Brown") (together, "Defendants") pursuant to Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). (Compl., ECF No. 1.) Kittle, who identifies as white, claims that during his three weeks of employment at Mavis' Hicksville location, he was subjected to discrimination, a hostile work environment, and retaliation. (*See generally id.*) He brings Title VII and NYSHRL disparate treatment, hostile work environment, and retaliation claims against Mavis and NYSHRL claims against Brown for aiding and abetting Mavis' alleged disparate treatment, creation of a hostile work environment, and retaliation. (*Id.* ¶¶ 46–72.)

Before the Court is Defendants' Motion to Dismiss the Complaint in its entirety ("Motion") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (*See* Mot., ECF No. 24.)

1

For the following reasons, the Court grants in part and denies in part Defendants' Motion. The Court dismisses without prejudice Kittle's Title VII and NYSHRL disparate treatment and hostile work environment claims against Mavis and all NYSHRL aiding and abetting claims against Brown. The Court grants Kittle leave to file an amended complaint to cure the deficiencies identified in this Opinion and Order, as set forth below. The Court denies dismissal of Kittle's Title VII and NYSHRL retaliation claims against Mavis; accordingly, these claims proceed.

## FACTUAL BACKGROUND

The following facts are taken from the Complaint. (Compl.)[1]

Kittle, a white male, began his employment as a Manager in Training at Mavis in May 2020. (Compl. ¶ 16.) According to the Complaint, Mavis' New York Regional Director, Jim Napoli ("Napoli"), recruited Plaintiff "due to his reputation." (*Id.* ¶ 17.) Within the first two weeks of his employment, Kittle brought the Mavis location at which he worked from last place in its region to first place, and it stayed at first place for nearly every week of his employment. (*Id.* ¶ 18.)[2] In January 2021, Kittle was transferred to another Mavis store in Hicksville, New York to work as "Store Manager." (*Id.* ¶ 19.) During his first three weeks at the Hicksville location, Kittle earned bonuses based on the store's performance under his management. (*Id.* ¶ 20.) Store employees "regularly referred" to Kittle, who was one of the only white employees

---

[1] Under the Second Circuit's holding in *Clark v. Hanley,* 89 F.4th 78, 93 (2d Cir. 2023), the Court may consider on a Rule 12(b)(6) motion to dismiss "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents not expressly incorporated by reference in the complaint that are nevertheless 'integral' to the complaint." Neither the Complaint nor the parties' briefing on the present Motion attaches any extrinsic documents. Accordingly, I consider only the Complaint in resolving the Motion.

[2] It is not clear from the face of the Complaint by what metric Mavis ranks its locations.

in the store, as a "Nazi" and a "White Supremacist," made comments directed towards him about "white power," and responded to tasks Kittle assigned them by saying, "Yes Massa." (*Id.* ¶¶ 22–24.)

On or about January 26, 2021, Brown, a Senior Skills Coach, was assigned to work in the Hicksville location to train the technicians who reported to Kittle. (*Id.* ¶ 25.) Brown and all of the technicians under Kittle's authority are Black. (*Id.* ¶ 30.) According to Kittle, he was subjected to similar derogatory comments and remarks throughout that day. (*Id.* ¶ 26.) Kittle complained to Brown that the technicians participating in skills coaching were not servicing customer vehicles as they should have been, which upset customers, decreased productivity, and negatively impacted Kittle's weekly bonus. (*Id.* ¶¶ 27–29.) When Kittle attempted to assert his authority over the technicians as their manager, Brown referred to him as a "massa," "demanding that his slaves work." (*Id.* ¶ 30.) Brown also referred to Kittle as a "white supremacist" and directed a "Nazi salute" towards him while intentionally stepping outside the view of the store's surveillance camera. (*Id.* ¶ 31.) According to the Complaint, Kittle was the only white employee working in the store on January 26, 2021, and Brown's comments and conduct lowered the store's productivity on that day—resulting in a decrease in profitability for the store and a decrease in Kittle's compensation, which was based, in part, on store performance. (*Id.* ¶¶ 32–34.) That same day, or shortly thereafter, Kittle reported the comments and conduct to his direct supervisor, Michael DeGennaro ("DeGennaro"), as well as to Napoli. (*Id.* ¶¶ 35–36.) He was told to "deal with it" and, to his knowledge, no action was taken in response to his complaints. (*Id.* ¶¶ 37, 39.)

Shortly after Kittle's complaint to DeGennaro, Kittle was forced to transfer to a different store location without being provided any reason for the transfer. (*Id.* ¶ 38.) Soon after his

transfer, on or about April 8, 2021, Kittle's employment was terminated. (*Id.* ¶ 40.) Kittle was informed that he was being terminated because he had provided a New York State vehicle inspection waiver ("inspection waiver") to a customer. (*Id.* ¶ 41.) According to Kittle, he had confirmed with the New York State Department of Motor Vehicles (the "DMV") that the waiver he had provided the customer was valid. *(Id.)* The Complaint alleges that three of Kittle's "similarly situated co-workers" had provided the same inspection waivers to customers and were not terminated or disciplined. (*Id.* ¶ 42.) According to the Complaint, providing inspection waivers to customers was a common practice in the store where Kittle worked, as well as in other Mavis stores, and he had done so in the past with no issue. (*Id.* ¶ 43.) The Complaint alleges that Kittle suffered both financially and emotionally after the termination of his employment. (*Id.* ¶ 45.)

On or about August 3, 2021, Kittle filed a charge of discrimination and retaliation with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 2.) The EEOC issued a Notice of Right to Sue on January 16, 2024. (*Id.* ¶ 3.)

## PROCEDURAL HISTORY

On April 4, 2024, while represented by counsel, Kittle filed this lawsuit. (Compl.) The Complaint brings claims under Title VII and the NYSHRL alleging that Kittle was subjected to disparate treatment, a hostile work environment, and retaliation during the course of his employment at Mavis. (*See* Compl.) The Complaint seeks damages and equitable relief and claims that Mavis violated Kittle's rights under Title VII and the NYSHRL by (1) discriminating against him based on his race, (2) subjecting him to a hostile work environment, and (3) retaliating against him for reporting the alleged discrimination. (*Id.*) The Complaint also alleges

4

that Brown aided and abetted Mavis' NYSHRL violations by "actually participating" in the alleged discriminatory conduct. (*Id.*)

On June 14, 2024, Defendants requested a pre-motion conference in anticipation of filing a motion to dismiss the Complaint under Rule 12(b)(6). (ECF No. 11.) On July 23, 2024, this Court found that a pre-motion conference was not necessary and set a briefing schedule for the anticipated motion to dismiss. (Elec. Order, July 26, 2024.) On September 9, 2024, Magistrate Judge Anne Y. Shields, to whom this case is assigned for certain pre-trial matters, granted the motion by Kittle's attorney to withdraw as counsel. (Elec. Order, Sept. 9, 2024.)

Defendants filed the Motion on September 19, 2024. (Mot.; Mem. Supp. Mot. Dismiss ("Mem."), ECF No. 25.) On October 1, 2024, Kittle filed a letter requesting reconsideration of the order granting counsel's withdrawal and seeking assistance in securing representation. (ECF No. 26.) On October 22, 2024, Kittle filed a motion to appoint counsel and a motion for leave to proceed in forma pauperis, (ECF No. 27, 28), which Judge Shields denied on November 6, 2024. (ECF No. 30.) Kittle, now proceeding pro se, filed an opposition to Defendants' Motion on November 9, 2024 (Opp'n Mot. Dismiss ("Opp'n"), ECF No. 32), and Defendants filed a reply on November 21, 2024 (Reply Supp. Mot. Dismiss ("Reply"), ECF No. 34).

On December 4, 2024, Kittle filed a sur-reply without the Court's permission. (Pl. First Sur-Reply ("First Sur-Reply"), ECF No. 35.) On December 5, 2024, Defendants filed a letter requesting that the Court strike Kittle's First Sur-Reply as improper. (ECF No. 36.) On December 6, 2024, Kittle filed a letter stating that he believes a sur-reply is warranted given that "Defendants appear to have introduced new arguments in their reply brief that were not included in their original motion to dismiss." (ECF No. 37.) On December 22, 2024, Kittle filed a letter informing the Court that he was not able to view Defendants' opening brief until after he had

submitted his opposition brief. (ECF No. 38.) In light of Kittle's representations and pro se status, on December 26, 2024, the Court granted Kittle leave to file a second sur-reply to address any arguments that were first raised in Defendants' reply brief. (Elec. Order, Dec. 26, 2024.)

Despite the Court's order, Kittle did not timely file a second sur-reply. On April 6, 2025, the Court issued an order deeming the Motion fully briefed based on the submissions filed at ECF Nos. 24, 25, 32, 34, 35, and 37. (Elec. Order, April 6, 2025.) Nevertheless, on April 12, 2025, Kittle filed a letter attaching what he claims to be the sur-reply that he had previously submitted in late-2024 without the Court's permission. (Pl. Second Sur-Reply ("Second Sur-Reply"), ECF No. 40.)

The Court notes that Kittle's version of the procedural history is incorrect and his justification for filing multiple briefs and supplemental letters is implausible. First, although Kittle's December 22, 2024 letter represented that he had not had the opportunity to read Defendants' opening brief until after briefing had concluded, his December 6, 2024 letter sought leave to file a sur-reply precisely because, according to Kittle, Defendants' reply "appear[ed] to have introduced new arguments . . . not included in their original motion to dismiss"—indicating that Kittle had, in fact, read the opening brief. (*See* ECF Nos. 36, 38.) Second, although Kittle claims that the April 6, 2025 Second Sur-Reply is the same First Sur-Reply he filed in late 2024, the two are completely different documents. (*Cf.* First Sur-Reply, Second Sur-Reply.) The Court cautions Kittle that he is required to provide truthful representations to the Court.

Nevertheless, in light of Kittle's pro se status, the Court has considered all filings submitted by the parties in connection with Defendants' Motion, including Kittle's First Sur-Reply and Second Sur-Reply.

**LEGAL STANDARDS**

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Fed. R. Civ. P. 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

Generally speaking, the Court is required to construe pleadings "filed by pro se litigants liberally and [to] interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023).[3] "[A] pro se complaint, however inartfully pleaded,

---

[3] Unless otherwise indicated, referenced quotations omit all internal quotation marks, citations, footnotes, and alterations.

must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019). Nevertheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 09-cv-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). Because Kittle was represented by counsel at the time he filed the Complaint but lacked representation when he submitted his opposition to Defendants' Motion to Dismiss, the Court affords his Complaint the liberal construction granted to pro se litigants.

## DISCUSSION

Kittle claims that Mavis subjected him to disparate treatment, a hostile work environment, and retaliation in violation of Title VII and the NYSHRL because he is white, and that Brown aided and abetted Mavis' NYSHRL violations. Defendants move to dismiss the Complaint in its entirety under Rule 12(b)(6), arguing that: (1) the disparate treatment claims are not plausible because the alleged stray remarks are insufficient to support an inference of discrimination; (2) the hostile work environment claims are not plausible because the Complaint fails to allege conduct that was sufficiently severe and pervasive so as to interfere with Kittle's job performance; and (3) the retaliation claims are not plausible because the Complaint fails to allege facts that plausibly show that Kittle's transfer and termination were caused by his report of the alleged discrimination. (Mem. at 6–18.)

In opposition, Kittle argues that the Complaint's allegations of specific instances in which Kittle was called racially derogatory names plausibly support an inference of discriminatory motivation sufficient to state claims for disparate treatment under Title VII and the NYSHRL. (Opp'n at 2–3.) With respect to the hostile work environment claims, Kittle contends that the

Complaint sufficiently alleges offensive conduct that was severe enough to create a hostile work environment, including the use of racial epithets and gestures by Brown and other employees. (*Id.* at 4.) Kittle also contends that this conduct altered his work conditions as shown by the reduction in store productivity and its impact on Kittle's income. (*Id.* at 4–5.) Finally, as to the retaliation claims, Kittle contends that the close temporal proximity—less than three months— between his report of the alleged discrimination to his supervisor, and his transfer and ultimate termination, supports an inference that these actions were carried out with retaliatory intent. (*Id.* at 5–6.)

As explained in detail below, the Complaint fails to bring plausible disparate treatment and hostile work environment claims against Mavis under either Title VII or the NYSHRL, and therefore these claims are dismissed without prejudice and with leave to amend, as set forth below. Because the Complaint fails to allege primary violations for disparate treatment and hostile work environment under the NYSHRL, Kittle's NYSHRL aiding and abetting claims against Brown for those alleged violations are also dismissed without prejudice and with leave to amend. Because the Complaint fails to allege that Brown "actually participated" in any of the alleged retaliatory conduct, Kittle's NYSHRL aiding and abetting retaliation claim is also dismissed without prejudice and with leave to amend. However, the Complaint plausibly alleges claims for retaliation against Mavis under both Title VII and the NYSHRL; therefore the Motion is denied with respect to those claims.

## I.   Disparate Treatment Claims Under Title VII and the NYSHRL Against Mavis

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

race . . . ." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss a claim for disparate treatment, a complaint must plausibly allege that the plaintiff "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).[4]

Concerning the "adverse employment action" requirement, under the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] . . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Rather, the plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"—i.e., the plaintiff must have been "left [] worse off" but not necessarily "significantly so." *Id.* at 355, 359.

Under the NYSHRL, it is unlawful for "an employer . . because of an individual's . . . race . . . to refuse to hire or employ or to bar or to discharge from employment

---

[4] In *Menaker*, the Second Circuit held that, at the motion to dismiss stage, a plaintiff must establish "a prima facie case of . . . discrimination by demonstrating that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker*, 935 F.3d at 30. However, in *Littlejohn*, decided four years prior, the Second Circuit held that, at the motion to dismiss stage, the complaint need only "give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*"—and that with respect to the causation requirement in particular, the complaint need only allege facts providing "minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Despite the inconsistent use of the term "prima facie" between these two cases, I understand both cases to apply the same standard and that *Menaker* did not, in any way, modify the "reduced prima facie" standard articulated in *Littlejohn*. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (holding that "the prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement").

such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1). Courts have historically held that "[c]laims under the NYSHRL are analyzed identically to claims under Title VII, and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII." *Abada v. Delta Air Lines, Inc.*, No. 21-123-cv, 2022 WL 894704, at *1 (2d Cir. Mar. 28, 2022). However, there have been several recent developments to both laws. First, "the New York State Legislature passed several amendments to the NYSHRL in June 2019." *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 106 (S.D.N.Y. 2024). Second, as previously noted, the Supreme Court's 2024 decision in *Muldrow* clarified that an adverse action need not be "material" to state a Title VII discrimination claim. *See Muldrow*, 601 U.S. at 355. Neither the Second Circuit nor the New York Court of Appeals has addressed whether, and to what extent, the standard for adverse employment actions differs under Title VII versus the NYSHRL. However, district courts in this Circuit have generally held that the NYSHRL's 2019 amendments have "render[ed] the standard for [NYSHRL] claims closer to the standard of the [New York City Human Rights Law]," which is more relaxed than the Title VII standard. *Mitchell*, 745 F. Supp. 3d at 106; *see also*, *Livingston v. City of New York*, 563 F. Supp. 3d 432, 451 (S.D.N.Y. 2023).

Here, Defendants do not dispute that the Complaint plausibly alleges the first three elements of a disparate treatment claim. First, as a white person, Kittle is a member of a protected class. Compl. ¶ 10 (alleging that Kittle is white); *see Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 310 (2025) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 426 U.S. 273, 279 (1976) (holding that Title VII bars racial discrimination "against whites on the same terms as racial discrimination against nonwhites")). Second, the Complaint plausibly alleges facts

establishing that Kittle was qualified for his position. *See, e.g.*, Compl. ¶ 18 (alleging that Kittle "brought his store from being last place in its region to first place" during the "first two weeks of his employment"); *see generally* Mem. (failing to argue that the Complaint *does not* allege that Kittle was qualified for his position). Third, Defendants likewise do not dispute that the Complaint plausibly alleges that, at a minimum, Kittle suffered adverse actions under both Title VII and the NYSHRL due to Mavis' decision to transfer Kittle to a new role and to terminate his employment. *See* Compl. ¶¶ 38, 48 (alleging that Kittle suffered the adverse employment actions of transfer and termination); *see generally*, Mem. (failing to argue that the Complaint *does not* allege a qualifying adverse action); *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45–46 (2d Cir. 2025) (holding that termination is an adverse action for purposes of a Title VII discrimination claim); *Kemp v. Regeneron Pharm., Inc.*, 117 F.4th 63, 70 (2d Cir. 2024) (analyzing termination as an adverse action under the NYSHRL).[5]

However, the parties dispute whether the Complaint alleges facts that plausibly give rise to an inference of discriminatory animus as required to plead a disparate treatment claim. On this issue, the Second Circuit has explained:

---

[5] The Complaint alleges that Kittle suffered "multiple adverse actions," "including but not limited to" Kittle's transfer (Compl. ¶¶ 38–39, 62) and his April 8, 2021 termination (Compl. ¶¶ 40, 48, 62, 68). As noted above, in light of the 2019 amendments to the NYSHRL and the Supreme Court's decision in *Muldrow*, it is not yet established whether, and to what extent, the NYSHRL "adverse action" standard differs from the Title VII standard. Since the Motion does not argue that the Complaint fails to plausibly allege an adverse action, I do not address here whether each of the alleged "multiple adverse actions" qualifies as an adverse action under Title VII and the NYSHRL. Nevertheless, improper termination has long been recognized as a qualifying adverse action under the NYSHRL, and courts agree that, if anything, recent developments in the law have made the NYSHRL standard *more* permissive. *See Mitchell*, 745 F. Supp. 3d at 106 (holding that the 2019 amendments have rendered the NYRHSL more permissive); *La Marca-Pagano v. Dr. Steven Phillips, P.C.*, 12 N.Y.S.3d 192, 196 (2d Dep't 2015) (analyzing termination as an adverse employment action under the NYSHRL). Accordingly, at a minimum, Kittle's alleged termination qualifies as an adverse action under both Title VII and the NYSHRL.

> An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Littlejohn*, 795 F.3d at 312. "Such circumstances can include 'actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus.'" *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015) (quoting *LaSalle v. City of N.Y.*, 13-CV-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015)). In determining whether a challenged remark is probative of discriminatory intent, courts consider the following four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (quoting *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). None of these factors is dispositive. *Id.* Further, "[c]ourts in this Circuit have repeatedly granted motions to dismiss where the inference of discriminatory intent rests on stray remarks made by those outside of the plaintiff's chain of command." *Williams v. Westchester Med. Ctr. Health Network*, No. 21-cv-3746, 2022 WL 4485298, at *8 (S.D.N.Y. Sept. 27, 2022) (collecting cases).

In this action, the Complaint alleges that "other store employees" referred to Kittle as a "Nazi" and a "White Supremacist," made comments directed towards him about "white power," and responded to tasks Kittle assigned by saying, "Yes Massa," "inferring that [Kittle] was treating employees like slaves." (Compl. ¶¶ 23–24.) Additionally, the Complaint alleges that on January 26, 2021, when Kittle "attempted to assert his authority over the Technicians as their

manager, all of whom were Black, Mr. Brown, [who is] also Black, referred to [Kittle] as a 'massa' . . . demanding that his slaves work" and a "white supremacist" and directed a "Nazi salute" towards Kittle. (*Id.* ¶¶ 30–31.)

Although the alleged remarks are offensive and derogatory, "[t]he relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that *the decision-maker* was motivated by assumptions or attitudes relating to the protected class." *Henry*, 616 F.3d at 150 (emphasis added). The allegations at issue fail to provide "minimal support for the proposition that the employer was motivated by discriminatory intent," *Littlejohn*, 795 F.3d at 311, because they concern comments by co-workers not involved in the decision to transfer Kittle to a new job or terminate his employment. *See Williams v. Westcherster Med. Ctr. Health Network*, 2022 WL 4485298, at *8 (granting motion to dismiss where the alleged remarks were made by employees "outside of the plaintiff's chain of command"); *see also, e.g., Soloviev*, 104 F. Supp. 3d at 249 (dismissing disparate treatment claims where the plaintiff failed to allege that "anyone with control over the decision to fire [the plaintiff] made [the alleged discriminatory] comments"); *Brown v. Cnty. of Erie*, No. 12-cv-251, 2013 WL 885993, at *7 (W.D.N.Y. Mar. 8, 2013) (dismissing disparate treatment claim where the complaint lacked allegations that the employee who made the derogatory comment was involved in the decision to terminate plaintiff's employment). The Complaint does allege that the technicians working under Kittle's management directed racially derogatory remarks towards him, but it lacks any allegation that these comments were made by a decision-maker who had control over Kittle's employment, termination, or placement at a specific work location. (*See* Compl.) Thus, these alleged statements cannot be attributed to Mavis as Kittle's employer and therefore do not form a basis for disparate treatment liability under Title VII or the NYSHRL.

*See Abada v. Delta Air Lines, Inc.*, No. 19-cv-3903, 2020 WL 7481326, at *4 (E.D.N.Y. Dec. 18, 2020) (dismissing complaint where employees' derogatory remarks were disturbing and appeared to "reflect a significant animus on the part of certain . . . employees[,]" but plaintiff failed to allege that those employees were involved in plaintiff's termination), *aff'd*, 2022 WL 894704 (2d Cir. 2022).

Further, the Complaint's allegations that Brown made derogatory comments while training Kittle's employees on a single day in January 2021 are insufficient to plausibly allege that the employer was motivated by discriminatory intent as required at the motion to dismiss stage. Nowhere does the Complaint allege that Brown was Kittle's supervisor or a decision maker with respect to the termination of Kittle's employment.[6] *See Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) (holding that "isolated derogatory remark" made by someone with no role in plaintiff's termination was not enough to support a claim of discrimination (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)); *LaSalle*, 2015 WL 1442376 at *2 (noting that actions or remarks must be made by decisionmakers to give rise to an inference of discriminatory motive by employer). Thus, like the remarks of the technicians,

---

[6] As discussed above, *supra* note 5, since Defendants have not moved to dismiss on the ground that the Complaint fails to allege an adverse employment action, I do not address whether Kittle's alleged transfer qualifies as an "adverse employment action" under Title VII and the NYSHRL. Even if it does, the Complaint still does not allege who, specifically, made the transfer decision, much less that the decisionmaker also made any of the alleged offensive remarks. (*See* Compl. ¶ 19 (alleging that "plaintiff was transferred" without identifying who made the transfer decision); *id.* ¶ 38 (alleging that "plaintiff was forced to transfer," again without identifying who made the transfer decision).) Likewise, to the extent that the Complaint's reference to "multiple adverse actions" (*id.* ¶¶ 48, 68) is intended to encompass adverse actions other than transfer or termination, the Complaint does not identify with sufficient specificity what these adverse actions are, much less that Defendants engaged in them under circumstances giving rise to an inference of discrimination.

the alleged stray remarks by Brown are insufficient to plead a plausible disparate treatment

claim, despite the offensive and derogatory nature of the remarks. *Henry*, 616 F.3d at 150.

Moreover, the alleged derogatory remarks were not made in sufficiently close temporal

proximity to Kittle's termination. The alleged remarks were made in January 2021—more than

two months prior to Kittle's April 8, 2021 termination. "The time lapse between the remarks and

the adverse employment action suggests that the incidents were not related." *Mesias v. Cravath,*

*Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (dismissing discrimination

claim where one comment was made a year and a half before plaintiff was fired and the second

was made more than three months before his termination); *see also Richards v. City of New York*,

No. 19-cv-10697, 2021 WL 4443599, at *7 (S.D.N.Y. Sept. 28, 2021) (granting a motion to

dismiss where the lone allegation concerning discrimination was a "stray remark" made at "a

staff meeting more than one month before [the] [p]laintiff's termination," because "[t]he timing

and context of the remark . . . make clear that it was wholly unrelated to the decision-making

process" that resulted in the plaintiff's termination).

Further, the Complaint does not allege that the remarks made by the technicians or Brown

were "related to the decision-making process" resulting in Kittle's transfer or termination. *See*

*Henry*, 616 F.3d at 149. In fact, the Complaint affirmatively provides a reason for Kittle's

termination—"Plaintiff was told that he was being terminated because he had provided an

inspection waiver to a customer." (Compl. ¶ 41.) Although the Complaint generally alleges that

this reason was pretextual, it does not plead facts sufficient to plausibly allege that the comments

by Brown and the technicians show that the decision to terminate Kittle was motivated by

discriminatory intent. *See Soloviev*, 104 F. Supp. 3d at 249 ("[R]egarding the fourth element [of a

disparate treatment claim], the sine qua non of a discrimination action claim under Title VII is

that the discrimination must be *because of the protected characteristic*." (emphasis in original)).

Thus, the Court concludes that allegations regarding derogatory comments made by non-decision makers and having no nexus to Kittle's termination do not provide minimal support for the proposition that the Defendants were motivated by discriminatory intent in deciding to terminate Kittle.

Nor does the Complaint plead facts providing minimal support for discriminatory intent by alleging that Kittle was treated less favorably than "similarly situated non-White coworkers" who "were not subjected to the same or similar disparate treatment, i.e. discriminatory comments and remarks about their race." (Compl. ¶ 49.) Even assuming that the alleged offensive remarks themselves qualify as an adverse employment action under the Title VII/*Muldrow* standard—which, though permissive, still requires a showing of "some harm respecting an identifiable *term or condition* of employment," *Muldrow*, 601 U.S. at 355 (emphasis added)—and the post-2019 amendment NYSHRL standard, the Complaint fails to plausibly allege the existence of any specific individuals who were "similarly situated" to Kittle.

At the pleading stage, a plaintiff's allegations that he was treated differently from similarly situated individuals "outside the protected class will ordinarily suffice for the required inference of discrimination[.]" *Littlejohn*, 795 F.3d at 312. Nevertheless, to survive a motion to dismiss on such a theory, the complaint must still plausibly identify at least one individual "similarly situated in all material respects" to the plaintiff. *Brown v. Daikin America Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *see also*, *Blige v. City Univ. of New York*, No. 15-cv-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or

responsibilities were at [the defendant employer], how their conduct compared to plaintiff[']s or how they were treated differently by defendants."), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (dismissing plaintiff's gender discrimination claims based on disparate treatment because the complaint "fail[ed] to identify, let alone describe, any purported comparator"); *Soloviev*, 104 F. Supp. 3d 232 (dismissing Title VII and NYSHRL discrimination claims where "[p]laintiffs' complaint [was] devoid of allegations regarding [ ] similarly situated employees' supervisors, job specifics, job performance, or conduct").

Here, the Complaint is entirely devoid of any details regarding the purported comparators alleged in Paragraph 49. For instance, the Complaint fails to describe who these alleged comparators are, what their responsibilities were, how their workplace conduct compared to Kittle's, or how they were treated. Thus, because the Complaint fails to allege any facts that plausibly suggest that Plaintiff was similarly situated to any Mavis employee who allegedly was not subject to the same or similar adverse actions, Kittle fails to bring a plausible disparate treatment claim.

In sum, the Complaint fails to state a plausible disparate treatment claim under either Title VII or the NYSHRL because it fails to plead facts that plausibly give rise to an inference of discrimination. Accordingly, Defendants' Motion to Dismiss Plaintiff's Title VII and NYSHRL disparate treatment claims is granted without prejudice and with leave to amend as set forth below.

## II.    Hostile Work Environment Claims Under Title VII and the NYSHRL Against Mavis

A hostile work environment claim under Title VII requires a plaintiff to show that his workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that

the terms and conditions of his . . . employment were thereby altered." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020). This inquiry "involves both objective and subjective elements." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). To survive a motion to dismiss a Title VII hostile work environment claim, the plaintiff must plausibly allege (1) that he experienced conduct that was "severe or pervasive enough to create an *objectively* hostile or abusive work environment" and (2) that he "*subjectively* perceive[d] that environment to be abusive." *Id.* (emphasis added). In the objective inquiry, courts assess the totality of circumstances, weighing various factors, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Nevertheless, "Title VII . . . does not set forth a general civility code," *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and does "not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are due to the protected characteristic," *Carrington v. Mota*, 16-cv-8061, 2017 WL 3835883, at *12 (S.D.N.Y. Aug. 31, 2017).").

The plaintiff must also allege that his membership in a protected class caused him to experience a hostile work environment. *Id.* at 112; *see also* 42 U.S.C. § 2000e-2(a)(1) (prohibiting adverse employment actions "*because of* such [employee's] race, color, religion, sex, or national origin" (emphasis added)). In other words, courts apply a "but-for" causation test to determine whether the plaintiff would have experienced the same hostile work environment had he not been a member of the protected class at issue (here, Kittle's protected class is race). *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).

On October 11, 2019, the New York legislature amended the NYSHRL's hostile work environment provision to remove the "severe or pervasive" requirement for such claims. *See* N.Y. Exec. Law § 296(1)(h) (creating a cause of action for hostile work environment "regardless of whether [the alleged] harassment would be considered severe or pervasive under precedent applied to harassment claims"); *see also Maiurano v. Cantor Fitzgerald Secs.*, No. 19-cv-10042, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021). "[I]t is as of yet unclear whether [the NYSHRL and NYCHRL] standards are co-extensive, or whether the NYSHRL requires something in between federal and local law." *Nanakumo v. N.Y.C. Health & Hosps. Corp.*, No. 23-cv-314, 2025 WL 919479, at *10 (S.D.N.Y. Mar. 26, 2025). But district courts have generally agreed that "the amended NYSHRL standard is, at the very least, closer to the NYCHRL standard," *id.*—which requires only that the plaintiff's "employer treated [him] less well than other employees, at least in part for a discriminatory reason." *Williams v. N.Y.C. Housing Auth.*, 61 F.4th 55, 69 (2d Cir. 2023).

Kittle's hostile work environment claims under Title VII and the NYSHRL fail a Rule 12(b)(6) analysis. These claims are predicated on the allegations that subordinates directed racially derogatory comments toward Kittle during an approximate three-week period of employment and that a non-supervisor directed similar comments and an offensive gesture toward Kittle on a single day. (*See* Compl. ¶¶ 23–26, 30–31.) As an initial matter, the alleged comments and gesture certainly related to Kittle's race, and Kittle subjectively found this conduct offensive.

Nevertheless, under the Title VII standard, the Complaint fails to plausibly allege that Defendants' conduct during a period of around three weeks and on the day of January 26, 2021 was objectively so "severe or pervasive" that reasonable factfinders might find that conduct

hostile or abusive. *See Littlejohn*, 795 F.3d at 321 (concluding that general hostility directed at the plaintiff was insufficient to allege a hostile work environment under Title VII); *LaSalle*, 2015 WL 1442376, at *7 (finding complaint "failed to plead facts from which the Court could determine that [defendant's] comments were sufficiently frequent, severe, or pervasive to constitute a hostile work environment" where alleged derogatory "habitual" comments were made "on an unspecified number of occasions" and complaint failed to "indicate even an approximate number of times that [defendant] made such statements"). Likewise, although the Complaint generally alleges that "Store employees regularly referred to [P]laintiff as a 'Nazi' and 'White Supremacist' and made comments directed toward [P]laintiff about 'white power,'" it fails to plead facts plausibly alleging that such comments "were sufficiently frequent, severe, or pervasive to constitute a hostile work environment" under Title VII. Compl. ¶¶ 23, 31, 70; *LaSalle*, 2015 WL 1442376, at *7. While the alleged comments are certainly tasteless, derogatory, and ignorant, under these circumstances, they are not sufficient to state a plausible hostile work environment claim under Title VII. *See Alvarado v. Mt. Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 782 (S.D.N.Y. 2019) (dismissing hostile work environment claim predicated on comments that were "tasteless, meanspirited, and sound of ignorance and bias" where such claims were not sufficiently severe or pervasive to state a claim).

Moreover, the Complaint does not allege that "the terms and conditions of [Kittle's] employment were . . . altered" as a result of the alleged hostile work environment. *Agosto*, 982 F.3d at 101. Rather, the Complaint merely alleges that on January 26, 2021, the single day on which Brown was training his technicians, "the productivity of the Store had substantially decreased as a result of the training being held." (Compl. ¶ 27.) Specifically, the Complaint alleges, "[Kittle] complained to Mr. Brown that the Technicians participating in the skills

coaching were not performing services on customer vehicles that had been waiting," and that "[Kittle] believed that Mr. Brown was purposefully derailing the profitability of the Store." (*Id.* ¶¶ 29, 33.) These factual allegations show that Kittle blames some degree of decreased productivity on the fact that his technicians were undergoing training that day—not because of any remarks by Brown and other Mavis employees. These allegations do not plausibly support the inference that the store's productivity (and thus Kittle' bonus-based income) suffered because of any of the alleged derogatory comments directed toward him. *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) ("'[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment.")

Kittle's allegations of a racially hostile work environment likewise fail under the NYSHRL. As noted above, the New York Court of Appeals has not yet articulated the standard applicable to hostile work environment claims brought under the newly amended NYSHRL; thus, it is not clear whether the NYSHRL hostile work environment standard is now coextensive with the NYCHRL standard (historically the most liberal standard of the three civil rights laws discussed in this Opinion and Order), or whether it now falls somewhere in between the Title VII and NYCHRL standards. Regardless, the Complaint fails to state a claim even under the liberal NYCHRL standard because it fails to plausibly allege that Kittle's "employer treated [him] less well than other employees, at least in part for a discriminatory reason." *Williams*, 61 F.4th at 69. As explained above, the Complaint fails to identify in non-conclusory terms any similarly situated employee who was allegedly treated better than Kittle. *See supra* Discussion § I.

Thus, the Complaint's allegations do not amount to conduct so severe or pervasive as to plead a plausible Title VII hostile work environment claim. Nor does the Complaint allege

conduct plausibly establishing that Kittle was treated less well than other employees at least in part because of his race such that it pleads a plausible NYSHRL hostile work environment claim.

### III.    Retaliation Claims Under Title VII and the NYSHRL Against Mavis

Under Title VII's antiretaliation provision, it is unlawful for an employer to "discriminate against any [employee] . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. To state a claim for retaliation, a plaintiff must allege that

> (1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions.

*Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023).

Concerning the protected activity requirement, it is well-established that protected activities include not only formal charges of discrimination, but also broadly any "oppos[ition] [to] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a); *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). For the plaintiff to have engaged in protected activity, the plaintiff "need not prove that her underlying complaint of discrimination had merit," *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012), but only that the plaintiff had a "good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]," *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001). Concerning the "adverse action" requirement, an alleged retaliatory action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 179 (quoting *White*, 548 U.S. at 68). Finally, concerning the causation requirement, a plaintiff may show causation through "direct evidence" of "retaliatory intent." *Banks*, 81 F. 4th at 277. At the motion to dismiss stage, the plaintiff may also rely on

temporal proximity between the alleged protected activity and the alleged retaliation to state a

claim for retaliation. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). Here,

too, while courts have not yet clearly defined the scope of the newly amended NYSHRL, they

have generally agreed that the new retaliation standard is "more liberal" than the federal

standard. *See Menos v. Uncle Nearest, Inc.*, No. 22-cv-1449, 2025 WL 917347, at *16 (E.D.N.Y.

Mar. 25, 2025).

To plead a causal connection under Title VII and the NYSHRL, "the plaintiff must

plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action," i.e.,

"the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan v.

City of New York*, 888 F.3d 612, 625 (2d Cir. 2018); *see also Soloviev*, 104 F. Supp. 3d at 252

(holding that causation "must be prove[n] according to traditional principles of but-for

causation," requiring a showing that "the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer" (quoting *Zann Kwan v.

Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013))). A plaintiff may demonstrate a causal

connection between his engagement in protected activity and materially adverse retaliatory

action either "directly, through evidence of retaliatory animus directed against the plaintiff by the

defendant" or "indirectly, by showing that the protected activity [is] followed closely by

discriminatory treatment[] or through other circumstantial evidence such as disparate treatment

of fellow employees who engaged in similar conduct." *Hicks v. Baines*, 593 F.3d 159, 170 (2d

Cir. 2010). Title VII and NYHRL are "violated when a retaliatory motive plays a part in the

Defendants' actions whether or not it was the sole cause even if valid objective reasons for the

discharge also exist." *O'Brien v. City of N.Y., Dep't of Educ.*, 686 F. Supp. 3d 221, 236 (E.D.N.Y.

2023) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). The

Second Circuit has regularly held that "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127–28 (2d Cir. 2013). But it has not "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," and has held that each case must be decided according to its unique context. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Nevertheless, "courts in the Second Circuit have consistently recognized that five months of temporal proximity between protected activity and an adverse employment action is sufficient to establish a prima facie case of retaliation." *Brown v. City Univ. of N.Y.*, No. 21-cv-854, 2022 WL 4637818, at *18 (E.D.N.Y. Sept. 30, 2022) (citing *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021) (holding that five months between protected conduct and the alleged retaliatory action was "sufficient to permit an inference of causation")); *De Figueroa v. New York State*, No. 17-cv-0436, 2022 WL 4111028, at *8 (E.D.N.Y. Sept. 8, 2022) (collecting cases); *see also Summa*, 708 F.3d at 128 (finding "[t]he seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote.").

Here, the Complaint plausibly alleges retaliation claims under Title VII and the NYSHRL. As an initial matter, Defendants do not dispute that the Complaint plausibly alleges Kittle's participation in protected activity and an alleged retaliatory adverse action. As alleged, Kittle engaged in protected activity when he complained about the alleged discriminatory comments on January 26, 2021, to DeGennaro, his direct supervisor, as well as to Napoli, the Regional Training Manager. (Compl. ¶ 35); *see Littlejohn*, 795 F.3d at 317 (broadly defining protected activity to include virtually any instance in which "an employee communicates to [his]

employer a belief that the employer has engaged in a form of employment discrimination" (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cty*, 555 U.S. 271, 276 (2009))).[7] Moreover, the Complaint alleges that Kittle was transferred to a different role and that his employment was ultimately terminated on or about April 8, 2021. (*See* Compl. ¶ 40; Mem. at 16). Both of these actions constitute adverse actions because they could well "dissuade a reasonable worker from making or supporting a charge of discrimination." *Muldrow*, 601 U.S. at 348 (quoting *White*, 548 U.S. at 68); *Carr*, 76 F.4th at 179 (holding that a materially adverse action supporting a retaliation claim is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

Further, and despite Defendants' contentions, the Complaint plausibly alleges that Kittle's January 26, 2021 report of the alleged discrimination was followed by his transfer to a different role "[s]hortly thereafter" and his ultimate termination on April 8, 2021. (Compl. ¶¶ 25, 38, 40.) Since courts have found that allegations of a five-month—or even a seven-month—gap are sufficient at the motion to dismiss stage to establish a causal connection between alleged protected activity and the alleged retaliatory adverse action, the two and a half-month gap here is not too attenuated to support a causal relationship between Kittle's reporting of the alleged discriminatory remarks and his transfer and ultimate termination.

Accordingly, the Complaint plausibly alleges retaliation claims under Title VII and the NYSHRL against Mavis.

---

[7] To warrant protection from retaliation, a plaintiff "need not show that the behavior he opposed in fact violated Title VII; he must, however, show that he possessed a good faith, reasonable belief that the employer's conduct qualified as an unlawful employment practice under the statute." *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680–81 (2d Cir. 2016).

IV.    **Aiding and Abetting Disparate Treatment, Hostile Work Environment, and Retaliation Under the NYSHRL Against Brown**

Section 296(6) of the NYSHRL provides: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article"—including engaging in disparate treatment, participating in a hostile work environment, and engaging in retaliation—"or to attempt to do so." N.Y. Exec. L. § 296(6). The New York Court of Appeals has instructed that the NYSHRL aiding and abetting "provision should be construed broadly." *Griffin v. Sirva, Inc.*, 858 F.3d 69, 70–71 (2d Cir. 2017) (reporting response to certified question by the New York Court of Appeals). Accordingly, a non-employer individual who "actually participates" in the alleged discriminatory or retaliatory conduct can be held secondarily liable under the NYSHRL. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021). Still, despite courts' broad interpretation of the NYSHRL's aiding and abetting provision, an individual cannot be held liable for aiding and abetting disparate treatment, a hostile work environment, or retaliation under the NYSHRL where there is no underlying primary violation of the NYSHRL. *See Mascola v. City Univ. of New York*, 787 N.Y.S.2d 655, 656 (2005) ("As the claims against the university were properly dismissed, the court also properly dismissed the claims against the individual defendants for aiding and abetting.").

Here, the Complaint's claims against Brown for aiding and abetting Mavis' alleged disparate treatment, creation of a hostile work environment, and retaliation fail. With respect to the aiding and abetting disparate treatment and hostile work environment claims against Brown, these claims fail because the Complaint does not plausibly plead underlying NYSHRL primary liability claims against Mavis for disparate treatment or hostile work environment. *See Mascola*, 787 N.Y.S.2d at 656. With respect to the Complaint's claim against Brown for aiding and abetting Mavis' alleged retaliation, although the Complaint plausibly alleges an NYSHRL

retaliation claim against Mavis, it is implausible that Brown aided and abetted the alleged retaliatory conduct. As explained above, *supra* at Discussion Section III, the Complaint alleges that Mavis retaliated against Kittle by transferring and subsequently terminating him. (Compl. ¶¶ 19, 25, 40.) While the Complaint alleges that Brown made racially derogatory remarks to Kittle, it does not allege that Brown participated in any way in the decision to transfer Kittle to a different work location or to terminate his employment. Compl. ¶¶ 30–31; *see Francis*, 992 F.3d at 81 (holding that an employee can only be held liable for aiding and abetting NYSHRL violations where the employee "actually participates" in the alleged unlawful conduct). In fact, the Complaint alleges that Brown, as a "Senior Skills Coach," "train[ed] the Technicians that reported to [Kittle]" and "had the power to hire and fire employees" generally—not that he had the any supervisory or managerial authority over Kittle, who at the time was the "Store Manager." (Compl. ¶¶ 14, 19, 25.)

Accordingly, the Court dismisses all aiding and abetting claims against Brown, with leave to amend as set forth below.

## LEAVE TO AMEND

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). However, "leave to amend a complaint may be denied when amendment would be futile." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

Applying this standard, the Court grants Kittle leave to amend the Complaint in order to cure the deficiencies identified in this Opinion and Order with respect to: (1) the Title VII and NYSHRL disparate treatment claims against Mavis; (2) the Title VII and NYSHRL hostile work

environment claims against Mavis; and (3) the NYSHRL aiding and abetting claims against Brown for disparate treatment, hostile work environment, and retaliation. Any amended complaint shall clearly be labeled "Amended Complaint," shall bear the same docket number as this Opinion and Order, and shall be filed within thirty days from the date of this Opinion and Order. Kittle is cautioned that an Amended Complaint completely replaces the original Complaint. Thus, all claims and allegations Kittle wishes to pursue must be included in the Amended Complaint.

The Court encourages Kittle to consult with the Hofstra Law Pro Se Clinic located in the Central Islip Courthouse, which can provide free information, advice, and limited scope legal assistance to non-incarcerated pro se litigants. The Court notes that the Pro Se Clinic is not part of, nor affiliated with, the United States District Court. Consultations with the Pro Se Clinic can be conducted remotely via telephone. If Kittle wishes to contact the Pro Se Clinic to make an appointment, he may email them at PSLAP@Hofstra.edu or leave a message at (631) 297-2575.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Complaint (ECF No. 24) is granted in part and denied in part. The Court grants Defendants' Motion to Dismiss Kittle's Title VII and NYSHRL disparate treatment and hostile work environment claims against Mavis and NYSHRL aiding and abetting claims against Brown for disparate treatment, hostile work environment, and retaliation, with leave to amend, as set forth above. The Court denies Defendants' Motion to Dismiss the Title VII and NYSHRL retaliation claims against Mavis.

The Clerk of Court is respectfully directed to mail a copy of this Order to Kittle at his address of record and to note such mailing on the docket. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and

therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
    September 23, 2025

_Nusrat J. Choudhury_
NUSRAT J. CHOUDHURY
United States District Judge
